460 S.E.2d 785

**Harry HARTMAN, Plaintiff Below, Appellee,**

v.

**The BOARD OF EDUCATION OF the COUNTY OF MINERAL, a Statutory Public Corporation, Defendant Below, Appellant.**

**No. 22548.**

Supreme Court of Appeals of West Virginia.

Submitted May 10, 1995.

Decided July 17, 1995.

---

Jeffrey G. Blaydes and James M. Haviland, Crandall, Pyles & Haviland, Charleston, for appellee.

Lynn A. Nelson, Pros. Atty., Keyser, for appellant.

FOX, Judge: [1]

This appeal from the Circuit Court of Kanawha County, West Virginia, brings before

---

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through 31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 Febru-

this Court a dispute between the appellant, the Mineral County Board of Education (Board), and the appellee, Harry Hartman, a teacher employed by the Board. The dispute concerns the question of whether an Attendance Incentive Policy adopted by the Board became an element of Mr. Hartman's continuing contract of employment. The Board appeals from the circuit court's decision which answered this question in the affirmative.

On 20 June 1989, pursuant to the authority of W.Va.Code § 18A–4–10a (1993)[2] (Bonus for unused days of personal leave), the Board adopted for the 1989–90 school year an Attendance Incentive Policy (AIP) to reduce teacher absenteeism, thereby decreasing the cost of employing substitute teachers. The AIP provided that, at the end of the school year, any teacher with an attendance rate of 97.5 percent or better would receive a bonus based on the teacher's unused days of personal leave. As the appellant's brief states, the Board adopted the AIP "on the condition that it would be funded one year at a time from budget reserve funds only." For the 1989–90 school year, the Board funded the AIP by setting aside $75,000 from the 1989 fiscal year budget reserve. On 19 June 1990, the Board adopted the AIP for the 1990–91 school year, and on 10 October 1991, the Board adopted the AIP for the 1991–92 school year. On 15 September 1992, based on the superintendent's recommendation and the projected absence of a sufficient budget reserve, the Board eliminated the AIP for the 1992–93 school year.

On 5 November 1992, Mr. Hartman filed a grievance challenging the Board's elimination of the AIP. The grievance progressed through the various stages of the grievance procedure, and on 5 April 1993, a final grievance hearing was held by a hearing examiner

for the West Virginia Education and State Employees Grievance Board. The hearing examiner ruled against Mr. Hartman, and Mr. Hartman appealed to the Kanawha County Circuit Court. By decision dated 21 January 1994, the circuit court reversed the decision of the hearing examiner, concluding the "decision is contrary to applicable law."

Initially, this case presents a single question: Was the Mineral County Board of Education's Attendance Incentive Policy a policy of the Board subject to unilateral elimination by the Board or, once implemented by the Board, did the AIP become an element of the employment contract between the Board and the teachers of Mineral County and therefore subject to statutory provisions regarding the modification of such contracts?[3] On this question, the Grievance Board hearing examiner concluded the AIP was a policy of the Board and not a contract element. The circuit court rejected the hearing examiner's conclusion, ruling instead that the AIP had become an element of the teachers' contracts.

■ It is the opinion of this Court that a bonus established by a county board of education under the provisions of W.Va.Code § 18A–4–10a (Bonus for unused days of personal leave) can become a part of the teachers' continuing contracts of employment in only two ways: (1) by operation of statutory law manifesting a specific legislative intent that the bonus become an element of the teachers' contracts; or (2) by negotiation and subsequent mutual agreement of the board and the teachers. In the search for the necessary legislative intent, we first examine the statute authorizing the bonus.

As previously indicated, the Board adopted the AIP pursuant to authority provided by W.Va.Code § 18A–4–10a (1993): "County boards of education are authorized to pay to

---

ary 1995 a subsequent administrative order extended this assignment until further order of said Court.

**2.** This statute was enacted by the West Virginia Legislature in 1981.

**3.** West Virginia Code § 18A–2–2 (1993) states, in pertinent part:

   The continuing contract of any teacher shall remain in full force and effect except as modi-

fied by mutual consent of the school board and the teacher, unless and until terminated (1) by a majority vote of the full membership of the board before the first day of April of the then current year, after written notice, served upon the teacher, return receipt requested, stating cause or causes, and an opportunity to be heard at a meeting of the board prior to the board's action thereon[.]

their employees or to defined groups thereof, for the purpose of reducing absenteeism, a bonus at the end of an employment term for each unused day of personal leave accumulated by the employee during that employment term."

■ In support of the characterization of the AIP as a contract element, the appellee contends this statutory provision grants "teachers and school boards the option of negotiating away" personal leave days. We disagree. The statute does not contain the words "grant," "option," or "negotiation." The statute does not even refer, explicitly or by inference, to the teachers' employment contracts, and certainly gives the teachers no option for negotiating any matter related to the AIP. By its plain language the statute simply authorizes school boards to reduce absenteeism by paying a bonus for unused personal leave. We conclude W.Va.Code § 18A–4–10a evidences no legislative intent for the AIP becoming a part of the teachers' contracts. Accordingly, we next look to other statutes for such intent.

■ The appellee contends the AIP became a part of the teachers' contracts because the AIP is a benefit, and benefits become a part of the teachers' contracts by virtue of the operation of the statutory scheme which the appellee characterizes as "the pervasive structure governing the economic relationships between teachers and school boards." The appellee contends the AIP is a benefit just as a teacher's pension is a benefit. In considering this contention, we first return to the statute authorizing school boards to implement the AIP, and we note that W.Va.Code § 18A–4–10a contains no express or implied designation of the AIP as a benefit. Consequently, we conclude the authorizing statute provides no indication the legislature intended the AIP as a benefit. As support for the characterization of the AIP as a benefit, the appellee cites the West Virginia Wage Payment and Collection Act, W.Va.Code § 21–5–1 *et al.* (1989), which defines "fringe benefits" as *inter alia,* "production incentive bonuses." Thus, the appellee argues, in a view adopted by the circuit court, because the AIP is a bonus, by virtue of the Wage Payment and Collection Act's definitions, it is a benefit. We disagree with the appellee's application of this Act. The general definition of "fringe benefits" for the purpose of the Wage Payment and Collection Act of Chapter 21 does not supply sufficient support for the proposition the legislature intended to designate the AIP authorized in Chapter 18A as a benefit. Consequently, absent pertinent statutory designation of the AIP as a benefit, we cannot agree with the appellee's contention the education statutes in general work some unspecified statutory alchemy which supplies the otherwise unstated legislative intention of designating the AIP as a benefit.

We also believe the appellee's contention that the AIP is a benefit fails to distinguish between teacher benefits mandated by the legislature in this and other articles of the West Virginia Code, such as the pension benefit cited by the appellee, and matters such as the AIP which are not mandated, but merely authorized. The statute authorizing the AIP does not mandate these policies. Instead, it grants school boards the authority to implement such arrangement. We believe the difference is significant, as evidenced by the Mineral County Board of Education's manner of funding its AIP. The Board funded the AIP with budget reserves and made the continuation of the AIP contingent on the continuing existence of such reserves. When the funds evaporated, the Board eliminated the AIP. We find it unlikely the legislature would authorize an optional policy and, by implication only, intend the optional policy as a continuing contract element requiring funding *ad infinitum.* Such a path would surely lead to grave fiscal difficulties for the State's school systems. No less than any employer, school boards must implement policies which meet their continually changing fiscal circumstances.

And finally, we are not unmindful of the obvious: if we hold that a bonus enacted under W.Va.Code § 18A–4–10a becomes, by operation of law, a part or element of the teachers' continuing contracts of employment, county boards of education will be excessively hesitant about enacting such bonuses. This is particularly true in situations where, as here, the funding for such bonuses

is contingent upon financial resources which may be available some years and not others.

For the reasons stated above, we conclude that there was no legislative intent that a bonus created in conformance with W.Va. Code § 18A–4–10a become, by operation of statutory law, an element of the teachers' continuing contracts of employment.

■ We next turn to the question of whether the AIP became an element of the teachers' contracts by agreement of the parties. We find no evidence in the record of this case that the Mineral County Board of Education and teachers negotiated the AIP, reached a meeting of the minds, and, by agreement, made the AIP an element of the contract. The Board implemented the AIP for three successive years. Yet, the record contains no evidence that in any of these years the parties negotiated the terms and conditions of the AIP, reached a meeting of the minds, and agreed the AIP would become an element of the teachers' contracts. Quite to the contrary, the hearing examiner's findings of fact, adopted in their entirety by the parties and the circuit court, indicated that each year the Board "approved" and "adopted" the AIP. Each year the Board implemented the AIP by unilateral action, not by mutual agreement with the teachers.

Furthermore, the record contains no evidence that, at any time prior to the institution of the appellee's grievance, either party to the contract considered the AIP an element of the contract or in any way treated the AIP as a contract element. In this regard, we note that although the appellee challenges the Board's elimination of the AIP

as an improper contract modification made after 1 April, the appellee does not address the fact that each year the AIP was in force, the Board implemented the policy *after 1 April*. Simply stated, if the AIP was improperly eliminated after 1 April 1992, it was improperly implemented in each of the three previous years. For obvious reasons, the appellee does not challenge the AIP implementation in any of those three years. We conclude the AIP did not become a part of the teachers' contracts by agreement of the parties.

Thus, for the reasons stated above, we conclude the Attendance Incentive Policy adopted by the Mineral County Board of Education was a unilaterally implemented policy which did not become an element of the continuing contract between the Board and the teachers of Mineral County. Therefore, the Board's elimination of the AIP was not an action subject to the 1 April contract conclusion deadline established by W.Va. Code § 18A–2–2.

Accordingly, we reverse the 21 January 1994 decision of the Kanawha County Circuit Court and remand with directions to reinstate the decision of the West Virginia Education and State Employees Grievance Board.

Reversed and Remanded.